UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:03CV-627-H

ROBERT FRANKE PLAINTIFF

and

KENTUCKY ASSOCIATED GENERAL CONTRACTORS SELF-INSURANCE FUND INTERVENING PLAINTIFF

V.

FORD MOTOR COMPANY, GEMINI PRODUCTS, INC., d/b/a KNIGHT ERGONOMICS & ASSEMBLY SYSTEMS, and AIR TECHNICAL INDUSTRIES, INC. DEFENDANTS

and

FORD MOTOR COMPANY THIRD-PARTY PLAINTIFF

and

ABEL CONSTRUCTION COMPANY, INC. INTERVENING THIRD-PARTY PLAINTIFF

V.

BURNS MACHINERY MOVING & INSTALLATION, INC. THIRD-PARTY DEFENDANT

**MEMORANDUM OPINION**

On November 3, 2002, Plaintiff Robert Franke, an employee of Burns Machinery Moving and Installation ("Burns"), was injured while installing a mechanical lift table at Ford Motor Company's ("Ford") Kentucky Truck Plant ("KTP"). Plaintiff received workers' compensation benefits from Burns and has filed this negligence action against Ford. Plaintiff also brings claims for strict liability and negligence against the supplier of the lift table, Gemini

Products, Inc. (“Gemini”), and the manufacturer of the table, Air Technical Industries, Inc. (“ATI”).

Several Defendants have filed dispositive motions. Ford has moved for summary judgment on the ground that it is a “contractor” of Burns under the Kentucky Workers’ Compensation Act (the “Act”), KRS § 342.610, and is therefore immune from liability to Plaintiff under the Act’s exclusive remedy provision. Ford has also moved to dismiss claims against it by Intervening Plaintiff, Kentucky Associated General Contractors Self-Insurance Fund (“AGC”) on the ground that, because it has no liability to Plaintiff, there is no liability to AGC. In addition, Gemini has moved for summary judgment on the ground that is immune under KRS § 411.340, commonly referred to as the “middleman statute.”

The various motions are not entirely unrelated. The Court will consider each in turn.

I.

Many of the material facts to these motions are well established. A few are disputed.

Ford is in the business of designing, selling, and manufacturing motor vehicles. It uses powered lift tables as manufacturing aids at various points in the assembly process to raise or lower parts and equipment to assembly line workers. The Kentucky Truck Plant contains hundreds of lift tables of varying size and design. The installation and removal of lift tables is a common occurrence at Ford. The personnel that perform such installations are generally either Ford employees or independent contractors.

Ford has entered into what it refers to as a “Construction Commodity Management” contract (“CCM”) with Abel Construction Company (“Abel”) under which Abel performs work at KTP during “compression time” (when the plant is not building products and the assembly

line is not running) when there are not enough Ford employees available to do the required work. Abel has designated certain other contractors, including Burns, as "alliant partners." In this instance, Ford contracted with Abel to install a hydraulic lift table in a concrete pit. Abel performed as the general contractor under the CCM contract, and Burns performed as the rigging contractor.

Under similar arrangements, Abel and Burns perform work at Ford on a frequent basis. Both companies have permanently located construction trailers on Ford's property. Indeed, Burns was also working on a number of other projects at KTP around the time of Plaintiff's injury. Plaintiff estimates that he personally has helped install more than fifty lift tables at KTP. Phillip Bollinger, project manager for Burns since 1998, estimated that in the last seven years, Burns has installed, removed and installed, or re-installed "hundreds and hundreds" of lift tables.

Gemini supplied Ford with the lift table for the installation at issue. After receiving specifications from Ford employee Kenneth Strickler, Gemini ordered the lift table from ATI on Ford's behalf. This order process was routine – Gemini supplies many products to Ford and is considered a "Tier I" supplier of Ford for lift tables, which means that Gemini has met certain certifications required by Ford and is required and assumed to know Ford's particular safety and quality requirements. Gemini normally orders products from Knight Industries, a company that shares common ownership with Gemini. However, Knight Industries could not supply a table meeting the requirements of Ford at a competitive price, so Gemini ordered the lift table from ATI.

Prior to shipment, Gemini and Ford representatives attended a "buy off" at ATI's premises in Mentor, Ohio – essentially the final inspection of the tables prior to shipment to

Ford. At this meeting, Ford identified certain items to be changed or corrected before ATI shipped the table. It is unclear from the evidence exactly what modifications were requested, but among the items mentioned are: pressure gauges for the hydraulic system, encapsulation of rollers on the table, addition of a relief valve for the hydraulic system, modifying the safety pins to make them easier to insert and remove, and painting the pins yellow. It is also unclear from the evidence which party was responsible for ensuring that the requested changes were actually made prior to shipment, although one can logically infer that it was one of three parties: Ford, Gemini, or ATI. It is also unclear whether any or all of the requested changes were actually made to the lift table before it arrived at Ford, although it appears that the safety pins remained difficult to insert and remove. Regardless, ATI shipped the table directly to Ford and the installation proceeded as planned until the accident.

Although many details of the circumstances surrounding Plaintiff's injuries are in dispute, all parties agree that on November 3, 2002, while in the course and scope of his employment with Burns, Plaintiff sustained injuries during the installation of a hydraulic lift table in a concrete pit when the table fell, crushing Plaintiff beneath its weight. At the time of the injury, Plaintiff was in the concrete pit, beneath the lift table, attempting to remove the safety pins by hitting them with a four-pound hammer. While attempting to remove the second pin, it sheared. The table rotated upward and then collapsed on Plaintiff, severely injuring him. Subsequently Plaintiff filed this negligence action against Ford, alleging negligent supervision, direction, and/or participation in the installation of the table. Plaintiff also brought claims against Gemini for strict liability, breach of express or implied warranties, and negligence for its role in the procurement of the table for Ford.

II.

Ford contends that it is a "contractor" under section 342.610 of the Act and therefore is entitled to common law tort immunity under section 342.690. Section 342.690(1) provides

> If an employer secures payment of compensation as required by this chapter, the liability of such employer under this chapter shall be exclusive and in place of all other liability of such employer to the employee . . . and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death. For purposes of this section, the term "employer" shall include a "contractor" covered by subsection 2 of KRS § 342.610, whether or not the subcontractor has in fact, secured the payment of compensation.

KRS § 342.690(1). Section 342.610(2)(b) defines "contractor" as "a person who contracts with another . . . to have work performed of a kind which is a regular or recurrent part of the work, trade, business, occupation, or profession of such person." KRS § 342.610(2)(b). These two provisions combine to form the basis of what is commonly referred to as the "up the ladder" defense, under which an entity "up the ladder" from the injured employee who qualifies as a "contractor" under section 342.610(2) is entitled to immunity under section 342.690. *See Goldsmith v. Allied Bldg. Components, Inc.*, 833 S.W.2d 378, 381 (Ky. 1992). Therefore, if Ford is a "contractor" under section 342.610(2), it is not liable in tort to Plaintiff because Plaintiff has already received workers' compensation benefits through Burns, his immediate employer. *See U.S. Fidelity & Guar. Co. v. Technical Minerals, Inc.*, 934 S.W.2d 266, 267 (Ky. 1996).

Although "Kentucky courts have not mapped precisely the contours of section 342.610," *Thompson v. The Budd Co.*, 199 F.3d 799, 805 (6th Cir. 1999), they have addressed the "up the ladder" defense more generally in a number of instances. *See, e.g. Fireman's Fund Ins. Co. v. Sherman* & Fletcher, 705 S.W.2d 459 (Ky. 1986) (employee injured while performing rough

framing carpentry work on frame of house being constructed by a general contractor); *Daniels v. Louisville Gas and Elec. Co*., 933 S.W.2d 821 (Ky.App.1996) (employee injured while performing emissions testing on coal-fired generators at defendant's power station); *Thompson*, 199 F.3d at 803 (6th Cir.1999) (plaintiff injured while in the process of changing air filters at defendant's plant); *Granus v. North American Philips Lighting Corp.*, 821 F.2d 1253 (6th Cir.1987) (employee injured while refurnishing tank at defendant's manufacturing plant); *Smothers v. Tractor Supply Co.*, 104 F. Supp. 2d 715 (W.D.Ky.2000) (plaintiff injured while transporting merchandise from defendant's warehouse to its storeroom).

Indeed, because Ford Motor Company uses many contractors, it often has reason to assert such a defense, though not always with success. A number of the reported cases have involved employees of contractors doing work at KTP. *Decker v. Ford Motor Co.*, 1997 WL 640114 (6th Cir. Oct. 14, 1997) (plaintiff injured while removing obsolete tooling from an assembly line at defendant's plant); *Davis v. Ford,* 244 F.Supp.2d 784 (W.D. Ky. 2003) (plaintiff injured on his employer's property while loading crew cab roof panels onto racks that Ford supplied); *Gesler v. Ford Motor Co.*, 185 F. Supp. 2d 724 (W.D. Ky. 2001) (plaintiff injured while replacing automobile corrosion system at defendant's manufacturing plant); *Sharp v. Ford Motor Co*., 66 F. Supp. 2d 867 (W.D.Ky.1998), aff'd, 194 F.3d 1314, 1999 WL 801554 (6th Cir.1999) (plaintiff injured while loading rail cars at defendant's assembly plant). Ford is not entitled to the defense with respect to all contract employees at its plant. Each of these cases turns upon its particular relevant facts.

The central issue here is whether the installation of the particular type of lift table at issue is a "regular and recurrent" part of Ford's "work of the trade, business, occupation or

profession." KRS § 342.610(2)(b). If so, Ford is entitled to immunity as a contractor under section 342.690. However, Plaintiff argues that the particular installation in which he was injured was unique, essentially for three reasons: (1) the lift table was a larger size than average lift tables used at Ford, (2) the lift table was hydraulic, rather than pneumatic, and (3) the lift table was to be installed in a pit of greater than normal depth at Ford. Plaintiff notes that the table at issue was "the first hydraulic table that was being installed in a pit this deep." Pl.'s Resp. in Opp'n. to Def.'s Mot. for Summ. J. at 18, quoting Dep. of David Nation, Ford's Material Handling Engineer. Plaintiff further notes that Ford workers did not and were in fact not equipped to perform the excavation work for the concrete pit in which the lift table was to be installed.

Even if this installation was unique or even the first of its type, that does not resolve the dispute. The use of a contractor to perform a unique function does not mean that function cannot be "regular and recurrent" under section 342.610(2). *See, e.g.*, *Fireman's Fund Ins. Co.*, 705 S.W.2d at 462 ("rough carpentry" is a regular or recurrent part of the work of the building construction business, even if the general contractor never performed rough carpentry with its own employees); *Daniels*, 933 S.W.2d at 824 (emissions testing required by the EPA is a regular or recurring part of a coal fired electric plant's business). Even if Plaintiff was injured on the first installation of a larger than normal, hydraulic lift table in a deeper than normal pit, that does not determine the "regular and recurrent" issue under section 342.610(2).

In fact, installation, removal, and replacement of lift tables occurred constantly at Ford. Lift tables are an essential part of Ford's plant operations, as they are used in a myriad of ways on the production line and number over five hundred in KTP alone. Plaintiff admits he has

worked on at least fifty such installations, albeit none of this particular type. The installation, replacement and repair of lift tables seems to be a regular occurrence at KTP. Thus, by any definition, the general category of work was an ordinary occurrence. The Court finds that the installation of the lift table in question, although unique in certain ways, was a regular and recurrent part of Ford's business within the meaning of section 342.610(2). Accordingly, Ford is a "contractor" under section 342.690(1) and is entitled to immunity from tort liability as provided in that section.

III.

Ford has also moved to dismiss the claims against it by AGC on the grounds that, because it is immune from liability to Plaintiff under section 342.690, it can have no liability to AGC. The Kentucky Supreme Court determined in *Fireman's Fund*, *supra*, that a contractor entitled to the "up the ladder" defense had no liability to the deceased employee's worker's compensation carrier. *Fireman's Fund*, 705 S.W.2d at 463-464. The Court stated that

> [the contractor] would have been liable for worker's compensation benefits to [the deceased employee] if his employer . . . had not secured those benefits . . .[b]ecause [the deceased employee's employer] secured the worker's compensation benefits, the actual dollar amount which [the contractor] became obligated to pay as compensation benefits to [the deceased employee] was zero. The statute thus limits the liability of [the contractor] to zero dollars.
>
> * * *
>
> We hold that KRS 342.690(1) limits the liability of [the contractor] to another who has paid benefits on account of injury or death of an employee to the amount of compensation for which [the contractor] is liable (in this case zero), and we further hold that the statute is not unconstitutional.

The situation here is analogous. Ford is immune from liability to Plaintiff under the "up the ladder" defense, and therefore Ford has also has no liability to AGC. Accordingly, the Court

will grant Ford's motion to dismiss AGC's claims for recovery of worker's compensation benefits it paid to or on behalf of Plaintiff.

IV.

ATI's has moved to amend its answer to add cross claims against Ford, Abel and Burns for common law indemnity. Based on the analysis in Section II of this Memorandum Opinion, Ford is immune from tort liability to Plaintiff under KRS § 342.610. Nevertheless, Kentucky law does permit common law indemnity claims against employers notwithstanding the state's adoption of comparative fault and the exclusive remedy provisions of the Act. *Degener v. Hall Contracting Corp.*, 27 S.W.3d 775 (Ky. 2000). Thus, ATI 's claim is not legally futile. The Court must consider its factual and legal premises.

The court sees no reasonable basis for an indemnity claim by ATI against Ford, Abel, or Burns. Taking every allegation in ATI's proposed cross claim as true – that the negligence of Ford employee Kenneth Strickler in operating the hydraulic controls on the table was responsible in whole or in part for the accident – still does not create a basis for an indemnity claim. A claim for indemnity is "one in which the claimant seeks restitution for damages it was required to pay for injuries sustained by another and which were entirely or primarily caused by the party against whom indemnity is sought." *Degener*, 27 S.W.3d at 781-82 (citation omitted). An example would be a situation in which a party was liable under principles of respondeat superior. That is simply not the case here.

Under Kentucky comparative fault principles, the jury will be instructed to apportion liability in proportion to the fault of each defendant. Assuming ATI's allegations are true and the jury agrees, the amount of the accident caused by the by negligence of Ford's employee will

be apportioned to Ford (even though Ford is immune from liability to Plaintiff), not to ATI. ATI will be liable only for its own negligence, if any. Because ATI has alleged no appropriate basis for asserting an indemnity claim against Ford, Abel, or Burns, however, the Court will deny its motion.

V.

Gemini has moved for summary judgment under the "middleman" provisions of section 411.340 of the Product Liability Act of Kentucky. That statute provides

> In any product liability action, if the manufacturer is identified and subject to the jurisdiction of the court, a wholesaler, distributor, or retailer who distributes or sells a product, upon his showing by a preponderance of the evidence that said product was sold by him in its original manufactured condition or package, or in the same condition such product was in when received by said wholesaler, distributor or retailer, shall not be liable to the plaintiff for damages arising solely from the distribution or sale of such product, unless such wholesaler, distributor or retailer, breached an express warranty or knew or should have known at the time of distribution or sale of such product that the product was in a defective condition, unreasonably dangerous to the user or consumer.

KRS § 411.340. For the statute to apply, Gemini must meet two prima facie requirements: (1) the manufacturer must be identified and subject to the Court's jurisdiction, and (2) the product sold by the wholesaler, distributor, or retailer must have been unaltered from its original manufactured condition. *See Salisbury v. Purdue Pharma, L.P.*, 166 F. Supp. 2d 546 (E.D. Ky. 2001). Both requirements are satisfied here. ATI, the manufacturer of the table, has been identified and is a party to this action, and all testimony indicates that Gemini made no alterations to the table, and the table in fact was shipped directly from ATI to Ford.

There are two exceptions to the statute's application, however. A wholesaler, distributor or retailer may be liable if it (1) breaches an express warranty or (2) knew or should have known at the time of distribution that the product was in a defective condition, unreasonably dangerous

to the user. Plaintiff argues that both exceptions are applicable here, because Gemini was responsible for ensuring that ATI made Ford's requested modifications to the lift table prior to shipment.[1] The Court agrees that if Gemini was responsible under the terms of its agreement with Ford for verifying that ATI made Ford's requested changes, it would not be immune under section 411.340.

The facts surrounding the arrangement between Gemini and Ford are obviously material and at this point remain in dispute. A Ford employee has testified that a Gemini representative told him that the requested modifications had been made and that the tables were "fine." If a jury were to believe that testimony and conclude that Gemini assumed a duty to verify that Ford's changes were properly made, Gemini could potentially be liable in part for resulting damages. Testimony also conflicts as to whether Gemini had any duty apart from that which it might have assumed through its statements that the tables were "fine" to ensure that those changes were actually completed. Another relevant evidentiary question is whether any failure to make requested modifications actually contributed in any way to Plaintiff's injuries. This issue also appears disputed.

Summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In reviewing a motion for summary judgment, the Court must view the facts in the light most favorable to the non-moving party and determine whether "the evidence presents a sufficient disagreement to require

---

[1]As there are other grounds for denying Gemini's motion for summary judgment, the Court need not consider the merits of Plaintiff's argument that under the UCC as adopted by Kentucky, Gemini's acceptance of a purchase order from Ford in and of itself created an express warranty that the lift table would conform to Ford's specifications, including the requested changes.

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

The Court concludes that based upon its current understanding of the evidence, a reasonable jury could find Gemini responsible for ensuring compliance with the requested changes to the lift table. If the resulting breach of an express warranty or the resulting sale of an unreasonably dangerous product caused injury, that would place Gemini outside the scope of section 411.340, which was designed to protect only those distributors, wholesalers, or retailers, who have no independent responsibility the design or manufacture of a product.

There remain several motions by Ford and Abel related to indemnity obligations between them and Burns. The Court will convene a telephone conference to determine whether these motions are moot. The Court will enter an order consistent with this Memorandum Opinion.

October 31, 2005

**John G. Heyburn II**
**Chief Judge, U.S. District Court**

cc: Counsel of Record